### HALL and Others *v.* NASH and Others.[*]

This case is the sequel to a case between the same parties reported in 4 Ind. R. 444. It was a bill in chancery by the appellants to recover a tract of land. The original pleadings and the facts of the case (which see) are there stated. In *May*, 1855, subsequent to the reversal of the decree in the case aforesaid, an amended complaint was filed, setting forth, in addition to the averments in the original bill, that although the deed was not tendered in the clerk's office, yet the plaintiffs fear that, in consequence of the death of the clerk, they will not be able to prove that fact; that certain of the complainants, at the time the deed should have been tendered, and the 762 dollars paid, were infants, and that no demand was ever made on them for said 762 dollars, nor notice to them given of the tender of a deed, if one was tendered; that *Nash* obtained possession of the land by fraud; that neither *Reed*, nor any person for him, paid the occupying claimants the 700 dollars for improvements. They claimed the right to redeem, or to have the 700 dollars with interest. They again averred that *Martha Hall*, and not *Nash*, paid the 762 dollars, which, they say, was accepted by *Reed's* agent; that *Nash* fraudulently procured the deed to be made to himself, instead of the heirs of *Hall*. In addition to his original answer *Nash* answered that the deed was tendered; that, at the time of the tender, all the heirs except *George* were minors; that *George* and *Martha*, the widow, were informed of the tender, and the

---

[*] The petition for a rehearing in this case was filed on the 5th of *August*, and overruled on the 13th of *October*.

agent of *Reed* demanded the money of them, &c. He denied fraud, or that he paid the 762 dollars for *Martha*, or that she paid it. *Betts*, in addition to his former answer, answered that in 1840 he was a minor; that he had no knowledge of the matters stated; but that, from information, he believed *Nash's* answer to be true. Replies in denial. *Nash* was introduced as a witness on behalf of *Betts*, and testified, 1. Touching an explanation of the receipt given for the 762 dollars. 2. As to the tender and contents of the deed. 3. In regard to an agreement with Mrs. *Hall* as to the surrender of possession. *Held*, that he was not a competent witness as to either of the points—because, as to the first two, he was charged with having fraudulently combined, &c.—with having procured the transfer of the title to himself, and transferring it to his co-defendant; and as to the third, he·was charged with having occupied the premises jointly with his co-defendant, and might have been jointly liable for rents and profits; hence, he could not testify as to the manner in which possession was obtained, or the terms upon which it was held, or of matters calculated to defeat a recovery of damages for occupation.

May Term,
1858.

HALL
v.
NASH.

APPEAL from the *Switzerland* Circuit Court.

Tuesday,
June 22.

HANNA, J.—This case was before this Court, and an opinion therein delivered, at the *November* term, 1853 (4 Ind. R. 444), upon the facts, &c., in that opinion stated. The decree was then reversed, and the proceedings subsequent to the answers set aside.

At the *May* term, 1855, of the Circuit Court, after the return of the case from this Court, upon leave given, an amended bill of complaint was filed, setting forth, in addition to the averments set up in the original bill, that although the said deed was not tendered in the clerk's office, as required by the order of the Court, yet the plaintiffs fear that they will not be able to prove the same, in consequence of the death of the then clerk of the Court; but charge that certain of said complainants, at the time said deed should have been tendered, and said 762 dollars paid, were infants, and that no demand was ever made on them for said 762 dollars, nor notice to them given of the tender of a deed in the clerk's office, if one was tendered, and that *Nash* obtained possession of said land by fraud; that neither *Reed*, nor any person for him, paid to the occupying claimants the said sum of 700 dollars for improvements. They claimed the right to redeem, or to have paid to them the said sum of 700 dollars, and interest. They again aver

that *Martha Hall*, and not *Nash*, paid said 762 dollars, and that the same was accepted by the agent of *Reed*, and that said *Nash* fraudulently procured the deed to be made to himself, instead of to the heirs of said *Hall*, &c.

In addition to his original answer, *Nash* filed his answer to the amended bill—that the deed was tendered, &c.; that at the time of the tender of said deed, all of said heirs except *George* and *Elizabeth* were minors; that he believes *Elizabeth* to have been of age. He says it is not true that none of said heirs were informed of said tender; but avers that *George* and *Martha*, the widow, were informed thereof, and that *Cochran*, the agent of *Reed*, had demanded the money of them; that *Reed* never paid the said 700 dollars; but does not admit but that they received the same from himself and *Culp*, as stated, &c. He denies fraud, or that he paid the 762 dollars for *Martha*, or that she paid it.

The answer of *Betts* to the amended bill was also filed, stating, in addition to his former answer, that, during the year 1840 he was a minor, and has no knowledge of the matters stated, &c.; but has read the answer of *Nash* and believes it to be true from information.

The complainants filed separate replies, denying the affirmative allegations in the said answers. Trial by a jury. Verdict and judgment for the defendants.

Errors are assigned, which will be noticed in their order.

1. The Court erred in admitting *Isaac Nash* to be sworn and to testify as a witness in the cause.

*Nash* was introduced as a witness on behalf of his co-defendant, *Betts*, and his testimony was, first, in reference to an explanation of the receipt given for the 762 dollars, on the record, copied in the opinion in 4 Ind. R. 444; secondly, in regard to the tender and contents of the deed, &c.; thirdly, as to an agreement with Mrs. *Hall* as to the surrender of possession, &c. His evidence was objected to. Was he a competent witness?

The second error assigned is, that " the Court erred in refusing to instruct the jury that they ought to disregard

the testimony of said *Nash*," and is, therefore, involved in the solution of the first.

We think the witness was incompetent to testify in reference to either of the points above referred to—as to the first two stated, because he was charged with having fraudulently combined, &c., and procured the transfer of the title to himself, and with transferring it to his co-defendant; and as to the third point, he is charged with having jointly occupied the premises with his co-defendant, and may have been jointly liable for rents and profits, and he was, therefore, not competent to testify as to the manner in which such possession was obtained, or the terms upon which it was held, or of matters calculated to defeat a recovery of damages for such occupation. *Dearmond* v. *Dearmond*, at this term (1).— *Wood* v. *Cohen*, 6 Ind. R. 455. In *Dean* v. *Thornton* and *Dutton*, which was a suit against defendants for entering the close and cutting and carrying away the timber of plaintiff, *Thornton* offered his co-defendant to prove that he had purchased the timber of the plaintiff. *Held*, that he was incompetent, because the "proof which would exonerate one, would necessarily discharge the other, provided it were receivable on behalf of both." 3 Kernan, 266. The *New York* statute is similar to ours, upon the subject of the competency of co-defendants as witnesses.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*J. Sullivan*, for the appellants.

*D. Kelso* and *P. L. Spooner*, for the appellees.

(1) 10 Ind. R. 191.